```
              UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF NEW HAMPSHIRE
```

**Industrial Tower and Wireless, LLC**

   **v.**                                      Case No. 07-cv-399-PB
                                                    Opinion No. 2009 DNH 033

**Town of East Kingston, NH**

### MEMORANDUM AND ORDER

Industrial Tower and Wireless, LLC ("ITW") alleges that the East Kingston Zoning Board of Adjustment ("ZBA") improperly denied ITW's application for a variance to construct a wireless telecommunications tower on property zoned only for residential uses. Before the court are cross-motions for summary judgment with respect to Count I of ITW's two count complaint. Count I alleges that the ZBA's ruling violates the Telecommunications Act of 1996 ("TCA") because it was not set forth in a written decision and was not supported by substantial evidence. See 47 U.S.C. § 332(c)(7)(B)(iii). For the reasons given below, I conclude that the ZBA failed to comply with the TCA's written decision requirement. Accordingly, I remand the matter to the ZBA and direct it to produce a written decision supporting its decision to deny the requested variance.

## I. BACKGROUND[1]

### A. East Kingston Zoning Requirements and New Hampshire Land Use Variance Law

East Kingston's Zoning Ordinance prohibits the construction of wireless towers in residential districts without a variance. Zoning Ordinance of East Kingston, Art. XV(D)(2). The Ordinance specifies that one of its goals is to "[r]educe adverse impacts such facilities may create, including, but not limited to: impacts on aesthetics, environmentally sensitive areas, historically significant locations, flight corridors, health and safety by injurious accidents to person and property, and prosperity through protection of property values." Art. XV(B)(2). The Ordinance further seeks to "[p]ermit the construction of new towers only where all other reasonable opportunities have been exhausted, and to encourage the users of towers and antennas to configure them in a way that minimizes the adverse visual impact of the towers and antennas." Art. XV(B)(4).

A New Hampshire zoning board may authorize a land use variance if the applicant proves that the following conditions are met: (1) the variance will not be contrary to the public

---

[1] Citations are to the Certified Record "CR" submitted by the Town of East Kingston.

interest; (2) special conditions exist such that literal enforcement of the ordinance results in unnecessary hardship; (3) the variance is consistent with the spirit of the ordinance; (4) substantial justice is done; and, (5) the variance will not diminish the value of surrounding properties.  See N.H. Rev. Stat. Ann. § 674:33, I(b); Simplex Techs., Inc. v. Town of Newington, 145 N.H. 727, 729, 766 A.2d 713, 715 (2001).  The New Hampshire Supreme Court has held that

> applicants for a variance may establish unnecessary hardship by proof that: (1) a zoning restriction as applied to their property interferes with their reasonable use of the property, considering the unique setting of the property in its environment; (2) no fair and substantial relationship exists between the general purposes of the zoning ordinance and the specific restriction on the property; and (3) the variance would not injure the public or private rights of others.

Simplex, 145 N.H. at 731-32, 766 A.2d at 717.

### B.   ITW's Application and ZBA Hearings

On April 26, 2006, ITW and its co-applicant Cingular Wireless submitted an application for a variance to construct a 180 foot wireless telecommunications Monopole tower and equipment area at 36 Giles Road, a 26-acre parcel of land owned by Jeffrey and Susan Marston and located in a residential zone in East Kingston (hereinafter the "Parcel").  (CR 2-78.)  On May 25, 2006, the ZBA held a public hearing and voted to grant ITW a variance.  (CR 79.)  Thereafter, Kenridge Farm, an abutter to the

Parcel and an intervenor in these proceedings, unsuccessfully sought a rehearing on the ZBA's decision.  (CR 80.)  The parties then discovered that another abutter had not been properly notified of the May hearing and stipulated that the matter would be remanded to the ZBA for a new hearing. (Pl.'s Mot. for Summ. J., Doc. No. 9-2, at 7.)

On December 19, 2006, the ZBA held a *de novo* hearing and again voted to grant ITW a variance.  (CR 81, 136-48.)  In early 2007, Kenridge Farm applied for and was granted a rehearing of the ZBA's decision.  (CR 82, 85-118.)  By this time, ITW had agreed to reduce the height of the proposed tower from 180 feet to 160 feet.  (CR 85.)  On April 26, 2007, the ZBA began the rehearing process with a public hearing and scheduled a balloon test to gauge the likely visual impact of the proposed 160 foot tower.  (CR 156-163.)  At this meeting, the ZBA also selected Mark Hutchins, an independent radiofrequency engineer, to be a consultant to the ZBA.  Id.  As the rehearing process continued, public hearings were held again on May 31, June 29, July 24, and August 23, 2007.  (CR 165-69, 170-74, 177-89, 190-216.)  At the August 23, 2007 hearing, a representative of ITW advised the ZBA that the applicant had agreed to both relocate the tower from its original proposed location to a new location on the Parcel and lower the tower height to 140 feet.  (CR 198.)  Over the course

of these public hearings, the ZBA received evidence both in support of and in opposition to ITW's application.

On September 27, 2007, the ZBA met to deliberate and voted to deny ITW's variance application.  (CR 203-16.)  The minutes of the September 27, 2007 ZBA meeting reflect the ZBA's agreement to separately review each of the variance requirements and vote on each requirement at the end of the discussion for that requirement.  (CR 204.)  As each variance requirement was raised, members were given an opportunity to discuss the evidence and arguments supporting and opposing a finding that ITW had met the requirement.  At the conclusion of the discussion with respect to each requirement, the ZBA cast votes as to whether the requirement had been met.  When all of the requirements had been voted on, the ZBA unanimously voted to deny the variance because: (1) the residential use restriction did not interfere with the applicant's reasonable use of the property; and (2) the proposed use would be contrary to the spirit and intent of the zoning ordinance.  (CR 216.)

On October 3, 2007, the ZBA issued a written notice of its decision, which stated:

> The East Kingston Zoning Board of Adjustment met on Thursday, September 27th, 2007 at the East Kingston Town Hall, 7 Main Street, and rendered the following decision: INDUSTRIAL TOWER AND WIRELESS, LLC AND Co-applicant Cingular Wireless 40 Lone Street Marshfield,

> MA 02050 (MBL #16-04-01) ZBA 07-01. The applicant
> filed an application seeking variance from Article XV,
> Section D.2. -- USE DISTRICTS for construction of a
> 160' monopole and equipment in a residential zone. By
> vote of at least three members, and based on the
> applicant failing to meet all the criteria, the Board
> voted to DENY the variance from Article XV, Section
> D.2. -- USE DISTRICTS for construction of a 160'
> monopole and equipment area in a residential zone.

(CR 83.)

On October 25, 2007, ITW, accompanied by co-applicant Cingular Wireless and Parcel owners Jeffrey and Susan Marston, moved for a rehearing. (CR 119-25.) The request for rehearing asserted that the ZBA ruling was unlawful because the ZBA erred in finding that ITW had failed to satisfy the first element of the hardship test, and in finding that the variance would not be consistent with the spirit of the ordinance. Id. The rehearing motion did not argue that the ZBA had failed to comply with the TCA's written decision requirement. On November 13, 2007, the ZBA voted to deny ITW's request for a rehearing, (CR 219-21), and later issued a written notice memorializing its decision. (CR 84.)

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment must first identify the absence of any genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The evidence submitted in support of the motion for summary judgment must be considered in the light most favorable to the nonmoving party, indulging all reasonable inferences in its favor. See Navarro v. Pfizer Corp., 261 F.3d 90, 93-94 (1st Cir. 2001). The burden then shifts to the nonmoving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot product such evidence, the motion must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996); see Celotex, 477 U.S. at 323. On cross motions for summary judgment, the standard or review is applied to each motion separately. See Am. Home Assur. Co. v. AGM Marine Contractors, Inc., 467 F.3d 810, 812 (1st Cir. 2006).

### III. ANALYSIS

ITW argues that the ZBA's denial of ITW's variance application violated the TCA in that the denial was not set forth in a written decision containing a clear explanation of the basis

-7-

for its denial.  (Pl.'s Mot. for Summ. J., Doc. No. 9).  It also argues that it is entitled to an injunction directing the ZBA to immediately issue all permits and approvals needed so that construction of the proposed wireless facilities can begin without delay.  Id.

East Kingston and Kenridge Farm respond by contending that the ZBA satisfied the written decision requirement by adequately explaining its decision in the minutes that were prepared for its September 27, 2007 meeting.  Alternatively, defendants argue that even if the ZBA violated the written decision requirement, the proper remedy is an order remanding the case to the ZBA rather than an injunction requiring the ZBA to approve the project.[2]

A.   **The Written Decision Requirement**

The TCA requires that any decision by a local board denying a request to construct a cell tower be "in writing".  See §

---

[2] Defendants also argue that ITW's written decision claim is not ripe for review because ITW did not present its claim to the ZBA in a motion for reconsideration.  This argument is based on the interaction of the TCA, which authorizes ITW to bring its claim only after a "final action or failure to act" by the ZBA, 47 U.S.C. § 332(c)(7)(B)(v), and  New Hampshire law, which provides that any challenge to a ZBA ruling that is not presented in a motion to reconsider is waived, N.H. Rev. Stat. Ann. § 677:3.  Relying on these provisions, defendants argue that the ZBA's decision is not "final" with respect to ITW's written decision claim because ITW did not present the claim in its motion to reconsider.  I decline to address defendants' ripeness argument because I determine that a remand to the ZBA is warranted for other reasons.

332(c)(7)(b)(iii).  In Southwestern Bell Mobile Sys. v. Todd, 244 F.3d 51 (1st Cir. 2001), the First Circuit examined the TCA's written decision requirement to determine what standard local authorities must meet.  Although the First Circuit determined that local boards are not required to include formal findings of fact or conclusions of law in a written decision, they cannot issue rulings that give no reasons for a decision "even where the written record may offer some guidance as to the board's rationale."  Todd, 244 F.3d at 60.  Accordingly, the court held that the written denial must "contain a sufficient explanation of the reasons for the permit denial to allow a reviewing court to evaluate the evidence in the record supporting those reasons." Id.

In addition, the First Circuit held in Todd that "the TCA requires local boards to issue a written denial separate from the written record."  Id.  The First Circuit opted for this bright line rule for both policy reasons and because the rule is required by the statutory language on which the written decision requirement is based.  The court noted that "[a] written record can create difficulties in determining the rationale behind a board's decision, particularly when that record reflects arguments put forth by individual members rather than a statement of the reasons that commanded the support of a majority of the

board." Id.  Further, the First Circuit stated that "[e]ven where the record reflects unmistakably the Board's reasons for denying a permit, allowing the written record to serve as the writing would contradict the language of the [TCA]," which distinguishes between a written denial and a written record.  Id.

In the present case, the ZBA's October 3, 2007 written Notice of Decision merely states that the ZBA denied ITW's variance application and does not contain any explanation of the basis for the ZBA's decision.  (CR 83.)  Although the decision is in writing and separate from the written record, it does not permit meaningful judicial review because it does not provide the reasons for the ZBA's denial.  By itself then, the October 3 Notice of Decision is clearly not sufficient to meet the TCA's written decision requirement.

Nor can the minutes of the ZBA's September 27 meeting serve as a substitute for a separate written decision as is required by the TCA.  While the ZBA reviewed each of the variance requirements separately at the meeting, the minutes reflect the varying arguments put forth by each individual member in supporting or opposing ITW's application rather than a clear rationale adopted by a majority of the board to support its ultimate decision on each requirement.  For purposes of fulfilling the TCA's written decision requirement, it is not

sufficient to record the varying opinions of individual board members because such an approach leaves aggrieved parties and reviewing courts to speculate on the reasons that persuaded the board's decision.  See Todd, 244 F.3d at 60; Nat'l Tower, LLC v. Plainville Zoning Bd. of Appeals, 297 F.3d 14, 21-22 (1st Cir. 2001).  Furthermore, as noted above, the requirement that a written decision be separate from the written record is based on the language of the relevant statute.  It is not a mere formality.  See Todd, 244 F.3d at 59-60.  Accordingly, the minutes cannot serve as a substitute for a separate written decision.  See id.  For these reasons, I conclude that the ZBA's denial of ITW's application violates the TCA's written decision requirement.[3]

---

[3] Because I find that the ZBA's denial of ITW's application violated the TCA's written decision requirement, I deny East Kingston and Kenridge Farm's cross motions for summary judgment and do not reach the substantial evidence issue raised in these motions.  See Todd, 244 F.3d at 59 ("Before examining the evidentiary support for the Board's decision, we must first determine whether the scope of our review is limited by the first requirement in section 332(c)(7)(B)(iii) that denials of permits be in writing."); ATC Realty, LLC v. Town of Sutton, 2002 WL 467132, at *5 (D.N.H. Mar. 7, 2002) ("satisfaction of these two requirements should be considered sequentially").

**B.    Remedy**

ITW's request for an injunction directing East Kingston to immediately issue all permits and approvals needed for construction of the proposed tower is an inappropriate remedy. ITW has cited no authority that mandates the issuance of an injunction granting the requested variance when a local land use board fails to comply with the written decision requirement.[4] Moreover, granting ITW the relief it seeks even though it did not raise its written decision claim in its motion for rehearing would grant ITW a windfall of sorts and create perverse incentives for future applicants to avoid asking local boards to issue written decisions where the requirement has not been met. See Nat'l Tower, 297 F.3d at 24-25 (noting that in the majority of cases the proper remedy for decisions that violate the TCA

---

[4] ITW has cited to several district court and Sixth Circuit cases to support its assertion that an injunction is the proper remedy for a failure to provide a legally sufficient written decision. However, the cases cited by ITW are all distinct from the present case in that they grant injunctive relief after finding that the local board's decision met neither the TCA's written decision nor substantial evidence requirements. See Tennessee ex rel. Wireless Income Props., LLC v. City of Chattanooga, 403 F.3d 392 (6th Cir. 2005); New Par v. City of Saginaw, 301 F.3d 390 (6th Cir. 2002); T-Mobile Cent., LLC v. City of Grand Rapids, 2007 WL 1287739 (W.D. Mich. May 2, 2007).

will be an order instructing authorization to construct the proposed wireless facility, but there are circumstances in which the TCA has been violated and remand is the appropriate remedy).

Remanding also serves the purpose of affording deference to local authorities "over decisions regarding the placement, construction, and modification of personal wireless service facilities."  47 U.S.C. § 332(c)(7)(A).  Finally, while a remand might seem to undercut the TCA's goal to have such matters be decided expeditiously, some of the responsibility for the prolonged application process rests with ITW, which contributed to the protracted history of this case by neglecting to address the written decision issue in its request for rehearing.  Had ITW raised the written decision issue in its request for rehearing, the ZBA would have been given the first opportunity to correct its mistake as contemplated by New Hampshire law, see Dziama v. City of Portsmouth, 140 N.H. 542, 544, 669 A.2d 217, 218 (1995), and the need for judicial review may have been obviated.

For all of these reasons, I conclude that an injunction is not a warranted remedy at this juncture.  Instead, I remand the case to the ZBA to issue a written decision that meets the requirements of the TCA.

## IV. CONCLUSION

For the foregoing reasons, I deny East Kingston and Kenridge Farm's cross motions for summary judgment (Doc. Nos. 14 and 17). ITW's motion for summary judgment (Doc. No. 9) is granted in part and denied in part. I remand the case to the ZBA and instruct it to issue a written decision in accordance with the requirements of the TCA within 30 days. If the ZBA fails to issue a sufficient written decision within 30 days, this court will grant an injunction directing the Town to authorize the construction of ITW's proposed wireless facilities. The clerk is directed to enter judgment accordingly.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

March 25, 2009

cc: Steven E. Grill, Esq.
    Russell Hilliard, Esq.
    Jeffrey Spear, Esq.